UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHELSEA O., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:23-CV-00215-CDL |
| ) | |
| MARTIN O'MALLEY,[1] ) | |
| Acting Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Plaintiff seeks judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying Social Security disability benefits. The parties have consented to proceed before a United States Magistrate Judge in accordance with 28 U.S.C. § 636(c). For the reasons set forth below, the Court **affirms** the Commissioner's decision.

**I.      Standard of Review**

The Social Security Act (the Act) provides disability insurance benefits to qualifying individuals who have a physical or mental disability. *See* 42 U.S.C. § 423. The Act defines "disability" as an "inability to engage in any substantial gainful activity by

---

[1]     On December 20, 2023, Martin O'Malley was sworn in as the Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), O'Malley is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 423(d)(1)(A).

Judicial review of a Commissioner's disability determination "is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (quoting *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)); *see also Biestek v. Berryhill*, --- U.S. ---, 139 S. Ct. 1148, 1154 (2019). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Noreja*, 952 F.3d at 1178 (quoting *Grogan*, 399 F.3d at 1261-62).

So long as supported by substantial evidence, the agency's factual findings are "conclusive." *Biestek*, 139 S. Ct. at 1152 (quoting 42 U.S.C. § 405(g)). Thus, the Court may not reweigh the evidence or substitute its judgment for that of the agency. *Noreja*, 952 F.3d at 1178.

## II.   Background

### A.   Procedural History

The plaintiff applied for disability insurance benefits and supplemental security income on May 19, 2020, alleging a disability onset date of June 1, 2017 (later amended to August 1, 2019). The plaintiff alleged that she became disabled due to a combination of

physical and mental conditions, including post-repair bilateral club feet, rheumatoid arthritis, osteoarthritis, lupus, fibromyalgia, bipolar I disorder, anxiety, and depression. R. 88-89. She was 27 years old on the alleged onset date.

The Commissioner denied plaintiff's application on initial review and on reconsideration. After the plaintiff requested a hearing before an Administrative Law Judge (ALJ), an online video hearing was held on August 2, 2022, including testimony by the plaintiff and a Vocational Expert (VE). *See* R. 18.

On September 23, 2022, the ALJ issued a decision denying benefits. On March 21, 2023, the Appeals Council denied the plaintiff's request for review, which rendered the ALJ's decision the agency's final decision. (R. 1-4). Plaintiff filed a timely appeal in this Court, which has jurisdiction to review the ALJ's September 23, 2022 decision under 42 U.S.C. § 405(g).

**B.    Factual Background**

The plaintiff completed high school and vocational training as a certified nursing assistant (CNA). R. 63, 395. She has worked in the past as a CNA, medical records clerk, chiropractic assistant, and cashier. *See* R. 382 et seq.; R. 59-65. At the time of the ALJ hearing, the plaintiff reported that she helps take care of her stepson, who has special needs. R. 26.

The plaintiff testified that, in 2020 and 2021, she applied to some jobs, but that her mental health conditions were worsening at the time, and due to trauma in her past, she was having "a very hard time being around people, men in general." R. 56. In her most recent job at a communication center, she quit after about two weeks because she found

the job was "very overwhelming" and demanded multitasking at a fast pace. R. 56-57. She worked as a psychiatric aide for a brief period in 2019, teaching a class in "legal lingo" to help psychiatric inmates understand the charges against them, helping clients by "being there for them to talk to," and assisting with their physical care needs. R. 64. However, she quit that job after an unspecified incident involving work with male patients. The plaintiff was able to receive unemployment benefits. R. 67.

Evidence in the record shows the plaintiff was badly mistreated and sexually abused as a child, and she has experienced depression, anxiety, panic attacks, nightmares, and conflict in relationships into adulthood. *See, e.g.*, R. 30-31, 34-35, 516. The plaintiff has a history of methamphetamine abuse, and in 2018 she was hospitalized involuntarily for management of suicidal ideation. *See* R. 475. In 2019 and early 2020, she visited the emergency department more than a dozen times for various complaints, including abdominal pain, a twisted ankle, upper respiratory symptoms, eye injury, head and neck injury during panic attack, shoulder injury, lacerations sustained when she fainted, abrasion from self-harming, foot and ankle pain, and other issues. *See* R. 651-813. She also received primary care treatment during that time period from the office of Mickey Tyrrell, M.D., and she received mental health treatment and counseling through Grand Lake Mental Health Center beginning in mid-2019. *See* R. 511-650, 815-943, 959-1184.

The plaintiff alleges that she experiences numbness in her hands and feet, tingling sensations, memory loss, problems with vision, fainting, and chronic vomiting. *See* R. 68. Testing in August 2019 confirmed the plaintiff has lupus. R. 27. In July 2022, the plaintiff reported bilateral lower extremity numbness, upper extremity numbness, worse on the right

4

side; blurry vision, weakness, and inability to walk. *See* R. 1210. She was admitted to the hospital for neurology work-up and brain and spine imaging. The resulting diagnoses include suspected neuromyelitis optica. *See* R. 1218. The plaintiff testified that her physical conditions have exacerbated her mental health symptoms. R. 69. At the time of the hearing, in August 2022, the plaintiff was using a walker and a cane. R. 54.

### III. The ALJ's Decision

The Commissioner uses a five-step, sequential process to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. At step two, the ALJ determines whether the claimant has an impairment or a combination of impairments that is severe. At step three, the ALJ determines whether the claimant's severe impairment or combination of impairments is equivalent to one that is listed in the applicable regulation, which the Commissioner "acknowledges are so severe as to preclude substantial gainful activity." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988) (internal quotation and citation omitted); *see* 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpt. P, App'x 1 (Listings). At step four, the claimant must show that his impairment or combination of impairments prevents him from performing his previous work.

The claimant bears the burden on steps one through four. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). If the claimant satisfies this burden, thus establishing a prima facie case of disability, the burden of proof shifts to the Commissioner to show at step five that the claimant has the residual functional capacity (RFC) to perform other work available

5

in the national economy, considering the claimant's age, education, and work experience. *Id*.

Here, at step one the ALJ found that the plaintiff has not performed substantial gainful activity since her amended alleged onset date of August 1, 2019. R. 21. At step two, the ALJ determined that the plaintiff has severe impairments, including lupus, bipolar disorder, major depressive disorder, panic disorder, and post-traumatic stress disorder (PTSD). *Id*. The ALJ also found non-severe impairments including obesity, status post-bilateral clubfoot repair, mild bilateral carpal tunnel syndrome, mild left ulnar entrapment neuropathy at the elbow, left cervical radiculopathy, and mild axonal sensory neuropathy. *Id*. The ALJ acknowledged "very recent" evidence of lower extremity numbness, but noted that the longitudinal evidence showed plaintiff had a normal gait.

The ALJ noted a "very recent diagnosis of **Suspect** neuromyelitis optica" but found no evidence the diagnosis had been confirmed and noted plaintiff stabilized by the time of her release from the hospital. R. 22 (emphasis in original). The ALJ found the evidence did not show this condition met the 12-month durational requirement to support a finding of disability. *Id*. Noting the Commissioner's guidelines for the evaluation of fibromyalgia, the ALJ found the record lacks a proper diagnosis of fibromyalgia. R. 23.

At step three, the ALJ found that plaintiff's impairments do not meet or equal the severity criteria for any Listing, specifically addressing Listings for mental impairments and for systemic lupus erythematosus. The ALJ addressed the "paragraph B" criteria—four areas of mental functioning used to determine whether a claimant's mental impairments functionally equal a Listing. *Id.; see* 20 C.F.R. § 404 Subpt. P App'x 1. The ALJ found

6

that the plaintiff has a moderate limitation in each of the "paragraph B" domains—understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. R. 24.

At step four, after considering the entire record, the ALJ determined that plaintiff has the residual functional capacity (RFC) to perform

> light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following limitations. The [plaintiff] is able to lift, carry, push or pull up to 10 pounds frequently and 20 pounds occasionally. She is able to sit up to 6 hours in an 8-hour workday; and able to stand and/or walk up to 6 hours in an 8-hour workday. The [plaintiff] is able to frequently climb ramps or stairs, stoop, kneel, crouch or crawl; and able to occasionally climb ladders, ropes or scaffolds. She is able to understand, remember and perform simple and detailed tasks; and able to sustain attention and concentration for up to 2 hours at a time while performing simple and detailed tasks. The [plaintiff] is able to sustain the mental demands associated with performing simple and detailed tasks throughout an ordinary workday and workweek. The [plaintiff] is able to interact with supervisors as needed to receive work instructions; and able to work in proximity to coworkers but the job should not involve close communication or cooperation with coworkers in order to complete work tasks. The job should not involve interacting with the general public. The job should involve no more than ordinary and routine changes in work setting or work duties.

R. 25. The ALJ indicated that in making this finding, she considered all of plaintiff's symptoms in connection with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. §§ 404.1529 and 416.929 and Social Security Ruling (SSR) 16-3p, as well as medical opinions and prior administrative findings, in accordance with the requirements of 20 C.F.R. §§ 404.1520c and 416.920c. *Id.*

Citing testimony by the VE as to a hypothetical person with plaintiff's RFC, the ALJ found at step four that plaintiff is unable to perform any past relevant work. Accordingly, the ALJ proceeded to step five. Based on the VE's testimony as to a hypothetical person with plaintiff's age, education, and RFC, the ALJ found the plaintiff can perform the requirements of representative occupations including:

> *Laundry worker*, light exertion, unskilled, SVP Level 2, Dictionary of Occupational Titles (DOT) # 302.685-010, with 36,000 jobs existing in the national economy;
>
> *Small product assembler*, light exertion, unskilled, SVP Level 2, DOT # 739.687-030, with 205,000 jobs existing in the national economy; and
>
> *Folder*, light exertion, unskilled, SVP Level 2, DOT # 369.687-018, with 85,000 jobs existing in the national economy.

R. 38. Accordingly, the ALJ found plaintiff not disabled at step five. *Id*.

## IV. Discussion

The plaintiff argues that (1) the ALJ failed to develop adequate hearing testimony regarding plaintiff's limitations, and (2) the ALJ's RFC determination is not supported by substantial evidence. The Commissioner argues that the ALJ adequately developed the record, properly considered the medical and other evidence in the record, and supported her findings with substantial evidence.

### A. Hearing Testimony

The plaintiff argues that the ALJ failed to develop an adequate record during the video hearing, because she did not ask the plaintiff any questions regarding her functional limitations, including her alleged need to use a walker or cane. During the video hearing, the plaintiff's counsel opened with a statement noting that plaintiff "has some significant

8

and very severe physical impairments, that we will cover in her testimony," and noted that plaintiff "is currently using a prescribed walker." R. 54. The attorney adjusted the camera angle and asked the ALJ to confirm that she could see the plaintiff's walker, which the ALJ did. *Id*. However, plaintiff faults the ALJ for failing to ask any follow-up questions about her ability to walk and use of a cane or walker.

This argument fails. The burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability." *Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004). The administrative hearing is nonadversarial, but the ALJ is responsible for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." *Henrie v. U.S. Dep't of Health & Hum. Servs.*, 13 F.3d 359, 360–61 (10th Cir. 1993). As a result, "[a]n ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing." *Carter v. Chater*, 73 F.3d 1019, 1022 (10th Cir. 1996). "The duty to develop the record is limited to 'fully and fairly develop[ing] the record as to material issues.'" *Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997) (quoting *Baca v. Dep't of Health & Hum. Servs.*, 5 F.3d 476, 479–80 (10th Cir. 1993)). However, an ALJ is not required to "exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning. The standard is one of reasonable good judgment." *Hawkins*, 113 F.3d at 1168.

Here, the plaintiff's hearing counsel pointed out plaintiff's recent use of a walker, as noted above. The attorney further stated,

>**Attorney**: And a cane at times . . . will be documented in the Saint Francis records. However, we're not going to dwell on that seeing as that's so recent. We really want to cover the medical records covering the entire period of time being alleged. And I will follow up with questioning to do that.
>
>**ALJ**: Thank you.

R. 54.

The ALJ proceeded to question the plaintiff, primarily by reviewing her past employment and asking questions about her family, lifestyle, and circumstances. R. 55-67. Subsequently, counsel elicited additional testimony from the plaintiff about her recent treatment and evaluation for worsening numbness, fainting, vomiting, memory loss, and vision problems, and her mental health counselor's opinion that her physical conditions are exacerbating her mental health symptoms. R. 68-69. After the plaintiff's attorney concluded her questioning, the ALJ thanked the plaintiff and said she had no follow-up questions. R. 70. The attorney raised no objection or concern that the record warranted further development at that time.

Moreover, the ALJ's decision reflected consideration of written function reports by the plaintiff and her wife, as well as medical records documenting well over 100 treatment appointments, and the report of a psychological consultative examination. In cases like this, where the plaintiff was represented by counsel at the hearing, "the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored," and the ALJ "may ordinarily require counsel to identify the issue or issues requiring further development." *Hawkins*, 113 F.3d at 1167. Here, the ALJ reasonably relied on statements from the plaintiff's

counsel that the record was complete (with the exception of recent treatment records the ALJ would later receive). *See* R. 18-19, 51-52. As such, the plaintiff has not shown that the ALJ failed to develop adequate hearing testimony.

### B. RFC Determination

"The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence. Rather, in addition to discussing the evidence supporting [the] decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996)).

The plaintiff argues that the ALJ's decision failed to appropriately consider evidence relating to plaintiff's bipolar disorder and other mental impairments.[2] She points to plaintiff's diagnoses of Bipolar I, Borderline Personality Disorder, PTSD, depression, anxiety, and methamphetamine abuse disorder. The plaintiff emphasizes statements throughout the relevant time period, including plaintiff's reports that she has lost or quit jobs because of her mental impairment symptoms, has ongoing stress related to family conflict and a custody dispute over her three children, and has engaged in self-harm on numerous occasions. The medical evidence of record includes reports from dozens of

---

[2] The plaintiff's briefing does not present any adequately developed argument regarding the physical RFC determination; accordingly, any such objection is waived. *See Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) (stating that issues inadequately presented in the opening brief are waived).

encounters with medical and mental health providers (in person and/or via telehealth) over more than three years. The evidence also shows plaintiff received inpatient mental health treatment for six days in October 2018 due to suicidal ideation.

The ALJ's decision includes an extensive summary of the medical evidence documenting the above issues. However, the plaintiff argues that the ALJ erred by failing to discuss certain evidence. The plaintiff faults the ALJ for rejecting in part the opinion of Melinda Shaver, Psy.D., who performed a consultative examination of plaintiff on October 29, 2020. Plaintiff points to Dr Shaver's "guarded" prognosis of plaintiff's mental health issues and her opinion that that the plaintiff "does not appear emotionally capable of employment at this time." *Id.*; *see also* R. 947.

The ALJ's decision acknowledged Dr. Shaver's opinion but concluded that her "findings in whole are inconsistent with the severity of mental symptoms described by the [plaintiff]." R. 30. Dr. Shaver's prognosis appeared to be "based primarily on the [plaintiff's] self-report, rather than the examination findings and testing done." *Id*. Furthermore, Dr. Shaver opined that the plaintiff "appears able to complete some tasks in a timely and appropriate manner." R. 31. The ALJ found this consistent with evidence elsewhere in the record, noting "[o]bjective mental health treatment showed many normal findings relating to attention/concentration and thought process." *Id*. And, while Dr. Shaver opined that plaintiff could not manage benefit payments in her own interest—consistent with plaintiff's subjective report to Dr. Shaver—the ALJ noted that elsewhere in the record, plaintiff indicated that "she <u>can</u> manage finances." *Id*. (emphasis in original).

12

The ALJ's decision accurately recounted Dr. Shaver's report, noting that Dr. Shaver observed plaintiff "to have clear sensorium," and to be "fully oriented, including to purpose," with good recent and remote memory and a "fair" fund of general knowledge. *Id*. While the plaintiff "could not interpret proverbs[, she] could do 3 of 5 similarities," had "coherent and relevant speech," denied hallucinations, could perform serial 7 calculations from 100, and could spell the word "WORLD" forwards and backwards. *Id*. Dr. Shaver estimated plaintiff to have high-average intelligence, with good insight and fair judgment. *Id*.

Although the plaintiff reported to Dr. Shaver that her "alleged bipolar makes it difficult for her to be a productive member of society," her "PTSD is severe, and causes difficulty being around people, especially men," and anxiety and depression make it hard for her to function, the plaintiff "presented as cooperative and friendly" with a "neutral mood," congruent affect, appropriate behavior, and good eye contact. *Id*. While the plaintiff told Dr. Shaver she does not socialize with family or friends, she also said that she "enjoys reading and painting," which the ALJ noted "would require concentration and persistence." *Id*. By her own account, the plaintiff "does not have problems with memory and follows directions well." R. 32.

The ALJ gave a reasonable explanation for finding portions of Dr. Shaver's opinion unpersuasive, accompanied by an extensive summary of mental health treatment records, where the ALJ underscored evidence that plaintiff's memory was intact, she had a fair ability to make decisions and follow directions, and her attention, memory, and concentration were good. *See* R. 33-36. Additionally, ALJ's RFC determination is

13

consistent with the opinions of state agency reviewing consultants Donna Gallavan, Ph.D. and Lisa Swisher, Ph.D., which the ALJ found persuasive. *See* R. 36. While the plaintiff argues that the ALJ should have weighed Dr. Shaver's opinion differently, she has shown no reversible error with respect to this evidence.

The plaintiff also notes that, during an intake assessment at Grand Lake Mental Health on August 17, 2020, clinic staff noted a Global Assessment of Functioning (GAF) score of 50. *See* R. 821. The ALJ's decision related findings from the August 17, 2020 evaluation, but it did not acknowledge the GAF score.

The ALJ's omission of the GAF score, in itself, does not constitute reversible error. GAF scores are generally considered as "[o]ther medical evidence," which includes "judgments about the nature and severity of [an individual's] impairments, . . . medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." *Id*. § 404.1513(a)(3). In an unpublished opinion, the Tenth Circuit has noted that, "[w]hile a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy." *Lopez v. Barnhart*, 78 F. App'x 675, 678 (10th Cir. 2003) (unpublished) (quoting *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002) (an "ALJ's failure to reference the GAF score in the RFC, standing alone, does not make the RFC inaccurate")).[3]

Here, the Grand Lake evaluator did not provide any sub-scores or explanation as to how the GAF score was determined. Nor did the evaluator relate the GAF score to any

---

[3] Under 10th Cir. R. 32.1(A), "[u]npublished decisions are not precedential, but may be cited for their persuasive value."

particular functional abilities or limitations. Generally, under the DSM, a score in the range of 41 to 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *See Lopez*, 78 F. App'x at 678. However, the Tenth Circuit has observed that even a score of 40, "standing alone . . . does not evidence an impairment seriously interfering with a claimant's ability to work," as it "may indicate problems that do not necessarily relate to the ability to hold a job." *Id*.

The plaintiff argues in generalized terms that the record is "replete" with evidence of her mental health diagnoses. Doc. 8 at 13. However, the focus of a disability determination is on the functional consequences of a condition, not the mere diagnosis. *See Coleman v. Chater*, 58 F.3d 577, 579 (10th Cir. 1995); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis of arthritis, of course, says nothing about the severity of the condition."). Here, the ALJ's discussion of the evidence was adequate, in that it was reasonable and consistent with the applicable legal standards, and substantial evidence supports the ALJ's RFC findings. *See Glenn v. Shalala,* 21 F.3d 983, 988 (10th Cir. 1994) (holding that court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion); *see also Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) (on appeal, court reviews only sufficiency of evidence, not its weight); *Lax*, 489 F.3d at 1084 (court may not reweigh evidence and displace agency choice between two fairly conflicting views). The plaintiff has failed to show that the ALJ's omission of the GAF score amounts to harmful error. *See*

*Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("The burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.").

Finally, the plaintiff contends that the evidence shows she would miss too much work due to medical and mental health treatment appointments. She notes that the record documents nearly 150 occasions when plaintiff received medical or mental health services between 2019 and mid-2022. However, the plaintiff points to no authority indicating that an RFC determination should reflect absences caused by the treatment of impairments.

Existing guidelines do not support the plaintiff's argument that the RFC should reflect absenteeism required for medical treatment. *See* SSR 96–8p, 1996 WL 374184 at *1 (July 2, 1996) (ability to work on a "regular and continuing basis" means ability to perform work-related physical and mental activities "8 hours a day, for 5 days a week, or an equivalent work schedule"); *see also Cherkaoui v. Comm'r of Soc. Sec.*, 678 F. App'x 902, 904 (11th Cir. 2017) (explaining that "[t]he number of medical appointments [a claimant] attended is not a functional limitation caused by her impairments that would affect her physical or mental capabilities; thus, "whether the number of medical appointments affects [the claimant's] ability to work is not an appropriate consideration for assessing her [RFC] because that determination considers only the functional limitations and restrictions resulting from medically determinable impairments"); *Scull v Apfel*, 221 F.3d 1352, 2000 WL 1028250, at *1 (10th Cir. 2000) (unpublished) (disability determinations turn on the functional consequences, not the causes of a claimant's condition); *Higgs*, 880 F.2d at 863. Here, based on the record as a whole, the ALJ

reasonably concluded that the plaintiff could meet the demands of sustained work activity within the RFC determination. Nothing further was required.

### V. Conclusion

For the reasons set forth above, the ALJ's decision is supported by substantial evidence and reflects the application of proper legal standards. Accordingly, the decision of the Commissioner finding the plaintiff not disabled is **affirmed.**

**SO ORDERED** this 6th day of August, 2024.

Christine D. Little
United States Magistrate Judge